IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 21 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| JONATHAN N. THALASINOS,<br>PO Box 919 Peck Slip Station<br>New York, New York 10272<br><br>*Plaintiff*,<br><br>v.<br><br>THE HONORABLE<br>　　FRANCIS J. HARVEY,<br>Secretary of the Army<br>Department of the Army<br>120 Army Pentagon<br>*Washington, DC 20310-1020*<br><br>*Defendant.* | CASE NUMBER 1:05CV01862<br><br>JUDGE: Emmet G. Sullivan<br><br>DECK TYPE: Administrative Agency Review<br><br>DATE STAMP: 09/21/2005 |

**COMPLAINT**
Review of Decision of the Army Board for the Correction of Military Records;
Violations of Due Process of Law

**I. JURISDICTION**

(1) This Court has jurisdiction under 28 U.S.C. § 1331. Plaintiff raises claims arising under the U.S. Constitution, federal statutes, and military regulations.

(2) The Act of Congress upon which federal question jurisdiction rests is the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (2000), which permits a federal court to review decisions of the Army Board for the Correction of Military Records.

(3) Venue is proper because Defendant is a resident of the District of Columbia.

## II. THE PARTIES

(4) Plaintiff, Jonathan N. Thalasinos, while serving as a Major ("MAJ") in the U.S. Army Reserve, was administratively eliminated from the Army on grounds of larceny after accruing 15 years, 1 month and 15 days of active federal service.

(5) Plaintiff resides at the address provided in the caption above.

(6) Defendant is the United States of America, whose principle place of business is the address provided in caption above.

## III. STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

(7) Plaintiff was discharged from the U.S. Army on January 13, 2000.

(8) On February 19, 2003, Plaintiff submitted an application for the correction of records to the ABCMR.

(9) On October 17, 2003, the Army Board for the Correction of Military Records ("ABCMR") issued a final decision on Plaintiff's application. Plaintiff therefore has exhausted all administrative remedies.

(10) 28 U.S.C § 2501 requires the filing of a claim before this court within six (6) years after such claim first accrues.

(11) Plaintiff's claim first accrued on January 13, 2000, when he separated from the Army.

(12) Plaintiff's complaint is timely filed.

## IV. REGULATORY FRAMEWORK

(13) Army Regulation ("Army Reg.") 135-75, "Army National Guard and Army Reserve: Separation of Officers," and Army Reg. 15-6, "Procedure for Investigating Officers and Boards of Officers," govern Board of Inquiry hearings and the involuntary separation of Army Reserve

2

officers.

## V. **STATEMENT OF FACTS**

**Plaintiff's Military Service Prior to Incidents in Question**

(14) On November 28, 1984, Plaintiff received his commission as an officer in the U.S. Army.

(15) In 1986, Plaintiff completed the Judge Advocate General ("JAG") Officer Basic Course. In 1989, he completed the JAG Officer Advanced Course. In 1993, he completed the Command and General Staff College course.

(16) Plaintiff performed exceptionally well in the Army Reserve. He was awarded two Army Commendation Medals, two Army Achievement Medals, three Army Reserve Components Achievements Medals, the National Defense Service Medal, two Armed Forces Reserve Medals and six overseas training ribbons.

(17) Throughout his career, Plaintiff received outstanding Officer Evaluation Reports, citing his mission-first attitude and the effortless, efficient manner in which he performed his responsibilities.

(18) At the time of the incident giving rise to this claim, Plaintiff was on annual training attending the residential phase of the Military Intelligence course at Fort Huachuca, Arizona.

(19) In June 1999, Plaintiff was selected by the Army Promotion Board for appointment to the rank of Lieutenant Colonel (LTC).

**The Alleged Larceny and Its Punishment**

(20) On July 29, 1998, Plaintiff and his classmates were eating lunch. During their discussions, and in the spirit of camaraderie, it was decided that a small token trophy was necessary in order to back up the good-natured gamesmanship.

(21) Plaintiff decided that his trophy would be a small pocketknife, similar to the one he had purchased earlier at the Ft. Huachuca Post Exchange. He intended to use this ruse as his trophy claim.

(22) Plaintiff entered the Post Exchange, a few feet from the indoor mall concession area where he and his classmates were lunching, walked by the knife display in the Post Exchange, removed a knife from the shelf, and attempted to display it to his classmates who were outside the exchange.

(23) Plaintiff placed the knife in his pocket.

(24) Plaintiff did not leave the premises with the knife.

(25) A store security officer detained the Plaintiff and escorted him to the security office.

(26) At the security office, Plaintiff placed the knife on top of a television set, where it was located by store security personnel. After being transported to the Military Police station, Plaintiff was released on his own recognizance.

(27) On August 7, 1998, Plaintiff received nonjudicial punishment under Article 15, Uniform Code of Military Justice ("UCMJ"), from MG John D. Thomas, Jr., Commanding General (Regular Army), Fort Huachuca, for stealing a knife from the Fort Huachuca Post Exchange.

(28) MG Thomas directed that the Plaintiff receive a Memorandum of Reprimand ("MOR") and that it be placed in the restricted, as opposed to performance, portion of his Official Military Personnel File ("OMPF"), so that Plaintiff could continue his military career.

(29) On August 11, 1998, BG Gary Dilallo, Deputy Commander (Army Reserve), 77th Reserve Support Command ("RSC"), Fort Totten, NY, issued Plaintiff a MOR for the same

conduct. Over Plaintiff's objection, BG Dilallo directed that the MOR be placed in the performance portion of Plaintiff's OMPF.

(30) After the incident, the Army Promotion Board listed Plaintiff as being selected for promotion to the rank of LTC. MG Collins, Commanding General, 77th RSC, refused to endorse Plaintiff's promotion and returned the appointment letter to the Board.

### The Board of Officers Hearing

(31) On August 3, 1999, after Plaintiff had returned to his Army Reserve unit, MG Collins appointed a Board of Officers ("the Board") pursuant to Army Regulation 135-175 to determine if Plaintiff should be separated from the Army.

(32) On August 3, 1999, MG Collins appointed Colonel ("COL") Edward W. McCarty, the newly selected 77th RSC Staff Judge Advocate ("SJA"), to serve as both President and Legal Advisor (without vote) of the Board.

(33) The other Board members, Col. Frank J. Kogel and Col. Cristopher, were full-time AGR's at Fort Totten who worked closely with MG Collins.

### Requests for Recusal

(34) On August 24, 1999, Plaintiff's attorney requested that the area commander recuse COL McCarty as President and Legal Advisor to the Board, stating that it would be impossible for him to rule on potentially prejudicial and inadmissible evidence that might be proffered outside the presence of the Board and maintain the required neutrality and impartiality.

(35) On September 2, 1999, COL McCarty directed that a copy of his N.Y. Judge's Review profile be faxed to Plaintiff's attorney.

(36) On September 22, 1999, Plaintiff's co-counsel submitted to MG Collins a second request for the recusal of COL McCarty.

(37) MG Collins later designated COL McCarty to serve as Board President only.

## Exclusion of Evidence by the Board of Officers

(38) During the Board hearing, Plaintiff sought to introduce evidence challenging the allegation forming the basis of the involuntary separation action.

(39) The Board ruled that Plaintiff could not submit the desired evidence or otherwise contest the finding of guilt made by MG Thomas.

(40) The Board further ruled that the Article 15 proceeding confirmed Plaintiff's guilt, and Plaintiff therefore would not be allowed to present evidence to the contrary.

(41) Plaintiff timely and effectively objected to the Board's rulings.

## Plaintiff's Discharge from the Army Reserve

(42) On November 1, 1999, Plaintiff was assigned to the Army Reserve Control Group (Reinforcement) at St. Louis.

(43) On January 13, 2000, the Army Reserve Personnel Component in St. Louis issued orders discharging Plaintiff from the Army Reserve under the provisions of AR 135-175. Plaintiff's discharge was characterized as General, Under Honorable Conditions.

(44) On January 4, 2000 and February 1, 2000, Plaintiff's counsel requested a copy of the summarized record of the Board proceedings and a copy of the tapes of the hearing for the purpose of appealing the Board's decision.

(45) The Army Reserve did not provide Plaintiff with the requested materials.

(46) Plaintiff obtained the tapes of the Board hearing on or around June 15, 2005, after Plaintiff filed Freedom of Information Act and Privacy Act requests and follow-up letters, which included the threat of litigation in the case of non-compliance.

## Army Discharge Review Board

(47) On May 2, 2001, the Army Discharge Review Board ("ADRB"), in a majority opinion, granted Plaintiff's request to upgrade his discharge characterization to Honorable.

(48) On May 2, 2001, the ADRB concluded that Plaintiff's discharge was proper, and in a unanimous decision determined that the specified reason for discharge should not be changed.

(49) The ADRB noted that evidence indicated that on October 2, 1999, a Board of Officers met and recommended that the applicant be discharged with the issuance of a general discharge characterization, and that on November 7, 1999, the Commander, 77th RSC, recommended the approval of the Board proceedings.

## Appeal to the Army Board for the Correction of Military Records

(50) On February 19, 2003, Plaintiff submitted an application for the correction of records to the ABCMR.

(51) In his application, Plaintiff cited as error: (1) COL McCarty's dual participation as Board president and legal advisor; (2) COL McCarty's correspondence to defense counsel Bergrin prior to the Board hearing; (3) the legal office that conducted the legal review of the Board action included the Recorder and Board President/Legal Advisor of the Board; (4) the failure of COL McCarty and MG Collins to provide Plaintiff and his counsel the summarized recording of proceedings or the tape recording of the hearing; and (5) the Board's refusal to allow Plaintiff to present evidence regarding the alleged misconduct.

(52) On October 17, 2003, the ABCMR informed the Plaintiff that it denied his application.

(53) In its Memorandum of Consideration, the ABCMR addressed, together rather than independently, Plaintiff's contentions of partiality, bias, and professional conduct violations, dismissing each as having "no basis in fact."

(54) In its Memorandum of Consideration, the ABCMR found that Plaintiff's nonjudicial proceedings established his guilt, but did not address Plaintiff's complaint that the doctrine of res judicata was unlawfully applied by the BOI thereby collaterally estopping him from providing facts or arguments regarding the incident at the heart of the Board proceeding, the alleged larceny.

## VI. LEGAL CLAIMS

### *COUNT I*
### Violation of Due Process of Law: BOIs Exclusion of Evidence
### Pertaining to Allegations Forming the Basis of Elimination

(55) Paragraphs 1 through 54 are incorporated herein by reference.

(56) AR 135-175, ¶ 2-22(a) provides that a Board of Officers "will ensure that all hearings are fair and impartial."

(57) Non-judicial punishment under Article 15 of the UCMJ is not a judicial proceeding.

(58) The doctrine of res judicata does not apply to findings of guilt made during an Article 15 UCMJ proceeding. *See* Army Reg. 15-6, ¶ 3-6.

(59) The Board erroneously and unlawfully ruled that the doctrine of res judicata was applicable to Plaintiff's case.

(60) Violations of Army regulations constitute a violation of the due process provisions of the Fifth Amendment. *See, e.g. Antonuk v United States*, 445 F.2d 592, (6th Cir. 1971) ("Violation by the military of its own regulations constitutes a violation of an individual's right to due process of law.")

(61) The Army's failure to adhere to its own regulations violated Plaintiff's right to due process of law under AR 135-175, AR 15-6, and the Fifth Amendment.

(62) The ABCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

(63) The ABCMR failed to perform its duties under 10 U.S.C. § 1552; 32 C.F.R. § 581.3(b)(4); and AR 15-185.

(64) The BOI's ruling severely prejudiced Plaintiff.

(65) The ABCMR decision was arbitrary, capricious, and unsupported by substantial evidence.

## COUNT II
### Violation of Right to Due Process of Law:
### Failure to Conduct a Fair and Impartial Hearing

(66) Paragraphs 1 through 54 are incorporated herein by reference.

(67) AR 135-175, ¶ 2-22(a) provides that involuntary separation Boards, "convened to determine if officers will be retained in the Army, will ensure that all hearings are fair and impartial."

(68) The Board's decision to apply the doctrine of res judicata resulted in unfair and partial hearing.

(69) Violations of Army regulations constitute a violation of the due process provisions of the Fifth Amendment. *See, e.g. Antonuk v United States*, 445 F.2d 592, (6th Cir. 1971) ("Violation by the military of its own regulations constitutes a violation of an individual's right to due process of law.")

(70) The Army's failure to adhere to its own regulations violated Plaintiff's right to due

process of law under Army Reg. 135-175, Army Reg. 15-6, and the Fifth Amendment.

(71) The ABCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

(72) The ABCMR failed to perform its duties under 10 U.S.C. § 1552; 32 C.F.R. § 581.3(b)(4); and Army Reg. 15-185.

(73) The ABCMR's decision was contrary to law, arbitrary and capricious, and unsupported by substantial evidence.

## *COUNT III*
### Violation of Right to Due Process of Law:
### Review of Board Proceedings

(74) Paragraphs 1 through 54 are incorporated herein by reference.

(75) Army Reg. 135-175, ¶ 2-20(a)-(3), provides that "[i]f the area commander in his review of a case in which involuntary separation has been recommended by the Board of Officers notes a substantial defect in the proceedings, he will take action as follows: If the Board committed an error that materially prejudiced a substantial right of the officer, he may close the case favorably to the respondent (para 2-20a(2)) or may reconvene a new Board to hear the case."

(76) Plaintiff timely and effectively objected to the Board's application of the doctrine of res judicata.

(77) The area commander failed to take actions to remedy these errors in accordance with AR 135-175.

(78) Violations of Army regulations constitute a violation of the due process provisions of the Fifth Amendment. *See, e.g. Antonuk v United States*, 445 F.2d 592, (6th Cir. 1971)

10

("Violation by the military of its own regulations constitutes a violation of an individual's right to due process of law.")

(79) The Army's failure to adhere to its own regulations violated Plaintiff's right to due process of law under Army Reg. 135-175 and the Fifth Amendment.

(80) The ABCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

(81) The ABCMR failed to perform its duties under 10 U.S.C. § 1552; 32 C.F.R. § 581.3(b)(4); and Army Reg. 15-185.

(82) The ABCMR's decision was contrary to law, arbitrary and capricious, and unsupported by substantial evidence.

## COUNT IV
### Violation of Right to Due Process of Law: Adverse Action Taken Where Substantial Error Existed

(83) Paragraphs 1 through 54 are incorporated herein by reference.

(84) Army Reg. 15-6, ¶ 2-3(c)(3)(c), provides that "[i]f the error cannot be corrected, or cannot be corrected without substantial prejudice to the individual concerned, the appointing authority may not use the affected part of that investigation or Board as the basis for adverse action against that person."

(85) The violations irreparably prejudiced Plaintiff and could not be corrected without nullifying the Board proceeding and convening of a new Board of Officers.

(86) The Army Reserve failed to take the required corrective action.

(87) The Army Reserve therefore was precluded from taking the adverse action of involuntary separating Plaintiff.

(88) Violations of Army regulations constitute a violation of the due process provisions of the Fifth Amendment. *See, e.g. Antonuk v United States*, 445 F.2d 592, (6th Cir. 1971) ("Violation by the military of its own regulations constitutes a violation of an individual's right to due process of law.")

(89) The Army's failure to adhere to its own regulations violated Plaintiff's right to due process of law under Army Reg. 135-175, Army Reg. 15-6, and the Fifth Amendment.

(90) The ABCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

(91) The ABCMR failed to perform its duties under 10 U.S.C. § 1552; 32 C.F.R. § 581.3(b)(4); and Army Reg. 15-185.

(92) The ABCMR's decision was contrary to law, arbitrary and capricious, and unsupported by substantial evidence.

### COUNT V
### Violation of Right to Due Process:
### Failure to Provide Plaintiff With a Complete Record of Proceedings

(93) Paragraphs 1 through 54 are incorporated herein by reference.

(94) Army Reg. 135-175, ¶ 2-27(b)(8), provides that "[t]he respondent will be given a copy of the proceedings, less classified documents, if requested."

(95) Army Reg. 15-6, ¶ 5-10, provides that "[u]pon approval or other action on the report of proceedings by the appointing authority, the respondent or counsel will be provided with a copy of the report, including all exhibits and enclosures that pertain to the respondent."

(96) The Army Reserve provided Plaintiff a grossly incomplete summary of the proceedings.

(97) Plaintiff made multiple requests to the Army Reserve for a copy of the tape recordings of the Board proceedings.

(98) The Army Reserve failed to provide Plaintiff the tapes.

(99) The Army Reserve's failure to provide the tapes severely prejudiced Plaintiff.

(100) Violations of Army regulations constitute a violation of the due process provisions of the Fifth Amendment. *See, e.g. Antonuk v United States*, 445 F.2d 592, (6th Cir. 1971) ("Violation by the military of its own regulations constitutes a violation of an individual's right to due process of law.")

(101) The Army's failure to adhere to its own regulations violated Plaintiff's right to due process of law under Army Reg. 135-175, Army Reg. 15-6, and the Fifth Amendment.

(102) The ABCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

(103) The ABCMR failed to explicitly address this allegation in its Decision Memorandum.

(104) By so acting, the ABCMR failed to perform its duties under 10 U.S.C. § 1552; 32 C.F.R. § 581.3(b)(4); and Army Reg. 15-185.

(105) The ABCMR's decision was contrary to law, arbitrary and capricious, and unsupported by substantial evidence.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court granted the following relief:

(1) Set aside the Board of officers' findings of fact and recommendation that Plaintiff be involuntary separated;

(2) Declare null and void the Army Reserve's decision to involuntarily separate Plaintiff;

(3) Direct that all documents pertaining to the Board of officers proceeding and Plaintiff's involuntary separation be expunged from his OMPF;

(4) Award Plaintiff costs expended in pursuit of this action;

(5) Award Plaintiff attorney fees in accordance with the Equal Access to Justice Act;

(6) Grant any other relief that the Court deems just and proper.

Respectfully submitted,

David P. Sheldon (DC Bar # 446039)
Counsel for Plaintiff

Law Offices of David P. Sheldon, P.L.L.C.
512 8th Street, S.E.
Washington, DC 20003
Tel: 202-546-9575
Fax: 202-546-0135