IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JONATHAN E. THALASINOS | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05-cv-01862-EGS |
| | ) | |
| SECRETARY OF THE ARMY, | ) | |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTIONS TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT**

Defendant files this Memorandum in support of Defendant's Motions to Dismiss, in part,

and for Summary Judgment. If this Court construes Plaintiff's Complaint[1] as a challenge to his

Board of Inquiry, the Complaint should be dismissed in part, pursuant to Federal Rule of Civil

Procedure ("Fed. R. Civ. P.") 12(b)(1), on the ground that the Court lacks subject matter

jurisdiction over such a claim due to expiration of the statute of limitations. The statute of

limitations is a condition on the government's waiver of sovereign immunity. Additionally, with

regard to Plaintiff's request for reinstatement into the U.S. Army, this Court should dismiss such

request, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be

granted due to nonjusticiability. Lastly, Defendant is entitled to judgment as a matter of law on

Plaintiff's remaining claims pursuant to Fed. R. Civ. P. 56 because there is no genuine issue as to

any material fact and the Army Board for Correction of Military Records's decisions are

supported by law and regulation. Defendant's statement of material facts and the Administrative

---

[1] Hereinafter, citations to the Complaint will be "Compl. p._, ¶_."

Record ("AR") support defendant's motions.

# I.  INTRODUCTION

Plaintiff, a former officer in the United States Army Reserve, brings suit under 28 U.S.C. 1331 and the Administrative Procedures Act ("APA"), 5 U.S.C. 701 et seq.  See Compl. p. 1. While serving on Active Duty for Training, plaintiff attempted to steal a pocket knife from the Fort Huachuca, Post Exchange.  AR 74, 98.  Subsequently, a Board Of Officer's recommended that Plaintiff be discharged and his service be characterized as Honorable under General Conditions.  AR 254.  Pursuant to a decision by the Army Discharge Review Board (ADRB), plaintiff's characterization of service was upgraded to honorable.  AR 244.  Plaintiff applied to the Army Board for Correction of Military Records (ABCMR) seeking reinstatement into the Army Reserves. AR 68.  The ABCMR denied the application finding that the record indicated plaintiff had committed larceny and that plaintiff had not satisfactorily shown that the record was in error or unjust.  AR 74.  Plaintiff seeks to have this Court set aside the Board of Officers' findings, declare his separation void, order the Army to remove all documents pertaining to the Board of Officers Inquiry and his involuntary separation from his file, and reinstate him.  Compl. p. 13-14.

# II.  SUMMARY OF ARGUMENT

The Court's review in this case is limited.  "The function of the District Court . . . [is] to determine whether the decision of the BCMR was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  White v. Secretary of Army, 878 F.2d 501, 503 (D.C.

Cir. 1989), citing Chappell v. Wallace, 462 U.S. 296, 303 (1983).   While this Court may void a discharge for procedural infirmities, *see* Dilley v. Alexander, 603 F.2d 914 (D.C. Cir. 1979), "Dilley cannot be construed as altering the relationship between the Correction Board and the Courts.  A Correction Board's determination that a procedural defect did not prejudice a member, and thus does not require it 'to correct an error or remove an injustice,' will be overturned only if such determination is arbitrary, capricious or contrary to law." Wolfe v. Marsh, 835 F.2d 354 (D.C. Cir. 1987).

Additionally, while it is within this Court's power to void a discharge for procedural infirmities, the question of Mr. Thalasinos' misconduct is a non-justiciable matter.  Piersal v. Winter 435 F.3d 319, (D.C.Cir., 2006) (review of Commander's imposition of punishment under Article 15, UCMJ is non-justiciable, but plaintiff's "more modest request" to review "the reasonableness" of the decision of a military board of correction pursuant to the standards of the APA is justiciable).

The limitation to reviewing the ABCMR decision and not the underlying military personnel decision is even more pressing in the instant case because the Court lacks jurisdiction over any challenge to the Board of Inquiry that occurred in 1999 because the six year statute of limitations passed in 2005, and Plaintiff did not file suit until January 2006.

Finally, Summary Judgment is appropriate because the ABCMR did not act arbitrarily or capriciously or in violation of law in denying Plaintiff's application for relief.  Accordingly, Defendant is entitled to summary judgment.

### III. STATEMENT OF FACTS

Plaintiff was appointed as a Reserve Commissioned Officer of the Army on November 28, 1984. AR 17, 66. Plaintiff was ordered to active duty for training ("ADT") with a report date of July 19, 1998. AR 32. While on ADT, on July 29, 1998 he was apprehended by the Main Exchange Security personal at Fort Huachuca, Arizona. AR 88. When faced with a charge of larceny, Plaintiff chose to proceed pursuant to Article 15 of the Uniform Code of Military Justice and to not demand a trial by court-martial. AR 89. Major General Thomas conducted the Article 15 proceedings and was convinced beyond a reasonable doubt that Plaintiff committed larceny on July 29, 1998. AR 88. Under the Uniform Code of Military Justice, Larceny involves taking or withholding of property from another with the intent to permanently deprive. 10 U.S.C. § 921. MG Thomas issued Plaintiff a General Officer Memorandum of Reprimand on August 7, 1998 as a punitive measure under Article 15, Uniform Code of Military Justice. AR 88-89. Plaintiff did not appeal the finding by Major General Thomas that Plaintiff was guilty of larceny. AR 89. On August 11, 1998, Brigadier General Dilallo issued Plaintiff an administrative letter of reprimand under the provisions of Army Regulation 600-37 and not as punishment under Article 15 of the Uniform Code of Military Justice.[2] AR 138.

On October 16, 1998, Plaintiff submitted his unqualified resignation. AR 20. In his letter dated October 24, 1998, Plaintiff stated he submitted his unqualified resignation because he recognized that his "actions were not in keeping with Army tradition." AR 49. On August 3, 1999, MG Collins appointed a board of officers pursuant to Army Regulations 135-175 and 15-6

---

[2] Army regulations allow Commander's to take administrative actions such as letters of reprimand in addition to or in lieu of proceedings under Article 15, UCMJ. See Army Regulation 27-10 ¶ 3-3.

to consider the involuntary separation of Plaintiff.  AR 102-105.  On August 3, 1999, MG Collins appointed Colonel McCarthy as the President of Administrative Separation Board.  AR 104.  The Board of Officers considered Plaintiff's case and adjourned on October 2, 1999.  AR 257.  On November 7, 1999, Major General Collins recommended approval for the separation of Major Thalasinos.  AR 249.  Plaintiff was discharged with an effective date of January 13, 2000.  AR 201.

On June 23, 2000, Plaintiff applied for the correction of his military record and requested that he be immediately reinstated and his General Discharge be vacated, or in the alternative his discharge be upgraded to Honorable.  AR 204.  On May 4, 2001, after a vote of 3 to 2, AR 245, the Army Discharge Review Board ("ADRB") sent a letter to Plaintiff explaining that his discharge was being upgraded, as requested, from a General to an Honorable.  AR 238.  On May 9, 2001, Mr. Chun, the Director for the Army Board for Correction of Military Records ("ABCMR"),[3] sent a letter to Plaintiff stating that because his alternate request for the Army to upgrade his discharge to an Honorable Discharge was granted by the ADRB, no further correction was being considered.  AR 203.  On December 11, 2001, the Army Review Boards Agency informed Plaintiff that his records were corrected and a new discharge certificate was provided to him.  AR 207.  Plaintiff's characterization of discharge was changed to Honorable pursuant to the November 5, 2001 orders.  AR 199.

Plaintiff applied again to the ABCMR on February 19, 2003 and requested that he be reinstated in the U.S. Army Reserves.  AR 76.  Many individuals wrote letters on behalf of

---

[3] The Army Board for Correction of Military Records is composed of civilians appointed by the Secretary of the Army, and has statutory authority to "correct any [Army] record" in order to "remove error or injustice."  10 U.S.C. § 1552(a).

Plaintiff and recommended that Plaintiff be retained in the Reserves.  AR 115-159.  On October

17, 2003, the ABCMR informed Plaintiff that his application was denied on October 9, 2003.

AR 196.   The ABCMR found that the record established that Plaintiff had committed Larceny

and that Plaintiff's allegations regarding the conduct of the Board were without merit.  AR 74.

## IV.  ARGUMENT

### A.  Any Challenge to the Board of Inquiry Should Be Dismissed

**1.  Standard of Review On A Motion To Dismiss Due To Lack of Subject Matter Jurisdiction**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the Plaintiff bears the burden

of establishing that the court has subject matter jurisdiction.  Dist. of Columbia Ret. Bd. v.

United States, 657 F. Supp. 428, 431 (D.D.C. 1987).  In considering a motion to dismiss for lack

of subject matter jurisdiction, the court accepts as true all material factual allegations in the

complaint.  Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other

grounds, 482 U.S. 65 (1987).  In addition, a court may consider such materials outside the

pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case.  See

Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Haase v. Sessions,

835 F.2d 902, 906 (D.C. Cir. 1987); Borg-Warner Protective Servs. Corp. v. EEOC, 81 F.Supp.

2d 20, 23 (D.D.C. 2000).

**2.  Any Challenge To Plaintiff's Board Of Inquiry In 1999 Must Be Dismissed Due To The Statute Of Limitations**

To establish that a court has jurisdiction over a suit against the United States, a plaintiff

must show that the court has subject matter jurisdiction over the issues raised by the suit, that the

United States has waived its immunity for suits of that kind, and that the United States has

consented to be sued in that particular court.  American Airlines, Inc. v. Austin, 778 F. Supp. 72, 74-75 (D.D.C. 1991)(citing 14 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure Jurisdiction 2d § 3654 (1985)).  Plaintiff's complaint does not, nor can it, establish these basic prerequisites to federal court intervention involving any challenge to his Board of Inquiry.

The United States, as sovereign, is immune from suit unless it consents to be sued. United States v. Mitchell, 445 U. S. 535, 538 (1980); United States v. Sherwood, 312 U.S. 584, 586 (1941).  Waivers of sovereign immunity cannot be implied, but must be unequivocally expressed.  Mitchell, 445 U.S. at 538 (quoting United States v. King, 385 U.S. 1, 4 (1969)). Unless sovereign immunity is explicitly waived, or does not apply, it bars equitable as well as legal remedies against the United States.  Army and Air Force Exchange Service v. Sheehan, 456 U.S. 728 (1982); Malone v. Bowdin, 369 U.S. 643 (1962).

The Federal Question Statute, 28 U.S.C. § 1331, upon which plaintiff relies, grants federal court jurisdiction over cases arising out of the laws or Constitution of the United States, but does not waive the government's sovereign immunity.  State of New Mexico v. Regan, 745 F.2d 1318, 1321 (10th Cir. 1984), cert. denied 471 U.S. 1065 (1985).

Title 28 U.S.C. 2401(a) provides that every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.  The purpose of the statute of limitations is well-established in law.  It bars stale claims, protects defendants from the disadvantages of lost records and witnesses, poor memories, and provides finality to disputes.  United States v. Kubrick, 444 U.S. 111 (1979); Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 3449 (1944).

The statute of limitations begins to run when the plaintiff is "armed with the facts about

the harm done to him." <u>United States v. Kubrick</u>, 444 U.S. 111 (1979); <u>see Harris v. FAA</u>, 353 F.3d 1006 (D.C. Cir. 2004); <u>Walters, et al. v. Secretary of Defense, et al.</u>, 725 F.2d 107 (D.C. Cir. 1983). Moreover, the statute of limitations may not be waived but must be strictly construed. <u>Id.</u> "The principal purpose of statutes of limitation is to 'protect defendants and courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.'" <u>Geyen v. Marsh</u>, 775 F.2d 1303, 1308 (5th Cir. 1985), <u>quoting Kubrick</u> at 117.

Similar to a challenge to a discharge, <u>see Nihiser v. White</u>, 211 F. Supp. 2d 125, 128 (D.D.C. 2002), Plaintiff's cause of action with regards to a challenge to the Board of Inquiry accrued when the final decision of the Board of Inquiry was complete and approved, which was November 7, 1999. AR 249, 255. Therefore, Plaintiff was barred from challenging the Board of Inquiry's decisions and procedures six years later, or on November 7, 2005 and any such challenge should be dismissed. Discharge of an officer who, like plaintiff, is recommended for discharge by a board of officers is a separate action taken by Head Quarters Department of the Army. *See* Army Regulation 135-173 ¶ 2-8.

## B. Plaintiff's Demand To Be Reinstated Is Nonjusticiable

## 1. Standard of Review

A plaintiff must state a claim upon which relief can be granted. <u>D.C. Retirement Bd. v. United States</u>, 657 F. Supp. 428, 433 (D.D.C. 1987). A court must accept the allegations of the complaint as true in determining whether to grant a Rule 12(b)(6) motion to dismiss for failure to state a claim. <u>Scolaro v. D.C. Bd. of Elections and Ethics</u>, 104 F. Supp. 2d 18, 22 (D.D.C. 2000);

see, e.g., Croixland Properties Ltd. Partnership v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999).

All reasonable inferences must be drawn in favor of the plaintiff, and a court should only dismiss

a complaint for failure to state a claim "'if it is clear that no relief could be granted under any set

of facts that could be proved consistent with the allegations.'" Id. (quoting Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984)); see also Price v. Crestar Secs. Corps., 44 F. Supp. 2d 351, 353

(D.D.C. 1999).  A court "does not test whether the Plaintiff will prevail on the merits, but instead

whether the claimant has properly stated a claim."  Price at 353.

## 2.  Reinstatement Of Plaintiff Is Nonjusticiable

Plaintiff's request that this Court "declare null and void the Army Reserve's decision to

involuntarily separate Plaintiff," or essentially reinstate Plaintiff, is nonjusticiable.  The United

States Supreme Court has admonished lower courts to be extremely reluctant to interfere with the

military's exercise of discretion in internal military matters, especially when adjudicating matters

involving discipline, morale, composition of the force, and personnel matters. *See, e.g.*,

Goldman v. Weinberger, 475 U.S. 503 (1986); Gilligan v. Morgan 413 U.S. 1 (1973); Orloff v.

Willoughby, 345 U.S. 83 (1953)(the military constitutes a separate discipline from that of the

civilian: "Judges are not given the task of running the Army ").  Consequently, "[u]nless

Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude

upon the authority of the Executive in military and national security affairs."  Department of the

Navy v. Egan, 484 U.S. 518, 530 (1988).  The federal courts "are ill-equipped to determine the

impact upon discipline that any particular intrusion upon military authority might have."

Chappell v. Wallace, 462 U.S. 296, 305 (1983).  The Constitution entrusts regulation and control

of the military to the legislative and executive branches of the Government.

9

Review of the underlying decision of whether plaintiff should be returned to Active duty is non-justiciable. Kreis v. Sec'y of the Air Force, 866 F.2d 1508. As the D.C. Circuit recently reiterated in military personnel decisions it is the decision of the Correction Board that is reviewable and not the underlying action. In Piersal v. Winter, 435 F.3d 319 (D.C.Cir., 2006), the Court stated:

> In Kreis we also acknowledged the "fundamental and highly salutary principle" that "[j]udges are not given the task of running the [military]." 866 F.2d at 1511 (quoting Orloff v. Willoughby, 345 U.S. 83, 93 (1953)); see also Gilligan v. Morgan, 413 U.S. 1, 10 (1973). In light of that principle, we held nonjusticiable a serviceman's claim for retroactive promotion. We held justiciable, however, the serviceman's "more modest request" to review "the reasonableness" of the decision of a military board of correction pursuant to the standards of the APA. Kreis, 866 F.2d at 1511. Review of that decision would not interfere unduly with military matters because "[a]djudication of [such] claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." Id. In other words, such review would not require the district court to substitute its judgment for that of the Secretary .... The court would only require the Secretary, on remand, to explain more fully the reasoning behind his decision and, with respect to his denial of a retroactive promotion, to apply the appropriate legal standard. Id. at 1512.

Id. at 322.

For the Court to reinstate Plaintiff, it would need to intervene in the management and control of the military, areas constitutionally reserved to the executive and legislative branches of government. Gilligan, 413 U.S. at 7, accord, Chappell v. Wallace, 452 U.S. 296, 301 (1983); see also Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989). Clearly, reinstating Plaintiff and ordering Defendant to appoint him again as an officer of the Army is beyond this Court's authority.

**C. The Decision Of The ABCMR Was Not Arbitrary, Capricious Or Contrary To Law**

**And Defendants Are Entitled To Summary Judgment**

**1. Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984). Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc.,477 U.S. 242 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." Celotex, at 325. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus to avoid summary judgment, the Plaintiff must state specific facts or present some objective evidence that would enable the court to find he is entitled to relief.

In an opinion issued the same day as Celotex, the Supreme Court explained the circumstances in which summary judgment is appropriate:

> If the evidence is merely colorable . . . or is not sufficiently probative . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

11

Anderson v. Liberty Lobby, Inc., 477 U.S. at 252.  Unsupported speculation is not enough to defeat a summary judgment motion; the existence of specific material evidentiary facts must be shown.  Fed. R. Civ. P. 56(e)(the nonmoving party may not rest on mere allegations but "must come forward with specific facts showing there is a genuine issue for trial."); see also Hayes v. Shalala, 902 F.Supp. 259, 263 (D.D.C. 1995)(opposition to summary judgment must consist of more than mere unsupported allegations or denials); Johnson v. Digital Equip. Corp., 836 F.Supp. 14, 18 (D.D.C. 1993)(evidence that is merely colorable or not sufficiently probative is insufficient to defeat summary judgment); Batson v. Powell, 912 F. Supp. 565, 578 (D.D.C. 1996) aff'd 203 F.3d 51 (D.C. Cir. 1999).

In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327, quoting Fed. R. Civ. P. 1.

## 2.  Review Is Limited Under The Administrative Procedures Act

To prevail in this Court, Plaintiff "must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997)(quoting Sanders v. United States, 594 F.2d 804, 813 (Cl. Ct. 1979).  To rebut this presumption, Plaintiff must establish through "cogent and clearly convincing evidence" that the ABCMR's findings were arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulations. McDougall v. Widnall, 20 F.Supp. 2d 78, 82 (D.D.C. 1998).  Due to this very high standard, only the most egregious agency decisions do not satisfy this very deferential standard of review. Kreis

v. Air Force, 866 F.2d 1508, 1515 (D.C. Cir. 1989).

In reviewing an agency's action under the APA's standard, a Court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" MD Parmaceutical, Inc. v. D.E.A., 133 F.3d 8, 16 (D.C. Cir. 1998).  The explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge." Dickson v. Secretary of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995).  A reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Id.  Even if reasonable minds might reach differing conclusions, the Court is not empowered to substitute its judgment for that of the agency.  U.S.P.S. v. Gregory, 534 U.S. 1, 6-7 (2001).

"When reviewing a decision by a military Correction Board, a Court must do so under an 'unusually deferential application of the arbitrary or capricious standard of the APA.'" Lebrun v. England, 212 F. Supp. 2d 5, 14 (D.D.C. 2002)(quoting Musengo v. White, 286 F.3d 535, 538 (D.C. Cir. 2002)); see also Piersal v. Winter, 435 F.3d 319 (D.C. Cir. 2006)(Review of miliary correction board decision is to be under a particularly deferential standard of review).

## 3. The ABCMR's Decision Was Rational and Not Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Contrary To Law Or Regulations

The administrative record clearly establishes that defendant is entitled to summary judgment.  Pursuant to 10 U.S.C. § 1552, the Secretary has implemented Army Regulation 15-185, Exhibit A, to consider corrections to military records.  While Plaintiff makes various

13

general allegations of error, to include bias and improper decisions by the Board of Inquiry, see Compl. at 5-8, Plaintiff fails to identify how the decision by the ABCMR was arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulation when the ABCMR denied Plaintiff's request for reinstatement in the Reserves. Before discussing the ABCMR decision, a succinct discussion on the particular Counts as described by Plaintiff is appropriate.

Plaintiff makes various allegations in Counts I through V, but this Court's review is limited to the ABCMR decision. However, highlighting Plaintiff's misunderstandings regarding the alleged improper conduct by the Board of Inquiry provides the basis for this Court to grant Defendant's motion for summary judgment.

Essentially, the only allegation by Plaintiff in Counts I and II is that the Board of Inquiry improperly applied the doctrine of res judicata because he argues this doctrine does not apply to findings of guilt made during an Article 15 proceeding. Compl. at 8, ¶ 58. However Plaintiff's interpretation, and thus his reliance on paragraph 3-6 of AReg 15-6, is mistaken.

Pursuant to AReg 15-6, ¶ 3-6, (attached) a board of officers is not bound by the rules of evidence generally. Because there are no formal rules of evidence, the board *may* accept "anything that in the minds of reasonable persons is relevant and material to an issue." Id. The discretion of the board is evident in the use of the word "may." It was well within the board's discretion to determine what should be considered and how much weight it should be given. AReg 15-6, ¶ 3-6 does not mention Res Judicata. It does grant the Board broad discretion in determining what evidence is relevant. The Board makes its decisions based on the preponderance of the evidence standard. AReg 15-6, ¶ 3-9(b). Obviously a finding of guilt

14

beyond a reasonable doubt in an Article 15 hearing would merit considerable weight.

For Plaintiff's Counts III and IV, he challenges the process given to his application by the ABCMR. Compl. at 10-11. Again, the thrust of Plaintiff's claim is his interpretation that the Board applied res judicata and improperly considered the evidence. Compl. at 10, ¶ 75-76. As set forth above, Plaintiff's arguments are misguided. The ABCMR reviewed the record, including the finding of guilt by the Commanding General of Fort Huachuca in administering the Article 15 and concluded that the record indicated plaintiff had committed Larceny. AR 74. The Board considered plaintiff's evidence, allegations and information but were not persuaded that Plaintiff's shoplifting was a "prank gone bad." AR 74.

In Count V, Plaintiff states that he was not given an acceptable summary of the proceedings. Compl. at 12, ¶ 96. However, Plaintiff states he now has a tape of the proceedings, Compl. at 6, ¶ 46, which makes this point moot. Additionally, a detailed summary of the proceedings is enclosed in the record. AR 252-277.

Plaintiff's generic claims in Counts I through V that the Army violated its regulations fails to meet the standard necessary to defeat this motion for summary judgment.

Plaintiff argues that the ABCMR failed to perform its duties and its decision was contrary to law because it was arbitrary, capricious and unsupported by substantial evidence. However, as shown in the record, the ABCMR considered all the evidence that it possessed, both found within Plaintiff's military record and the application submitted by Plaintiff. AR 67.

In 2000, Plaintiff applied to the ABCMR and requested that he be reinstated and his General Discharge be vacated, or in the alternative that his discharge be upgraded to Honorable. AR 204. Because the ABCMR could not consider his request to upgrade his discharge until after

the Army Discharge Review Board ("ADRB") considered it, pursuant to 10 U.S.C. 1553, the

ABCMR waited for the ADRB to make its decision on Plaintiff's application. AR 203. After

the ADRB granted Plaintiff's request to upgrade his discharge, on May 9, 2001, the ABCMR

explained to Plaintiff that no further action would be taken on his application to the ABCMR

because his alternative request was granted by the ADRB. AR 203.

On February 19, 2003, almost two years after Plaintiff received notice from the ABCMR

regarding its decision, Plaintiff applied to the ABCMR again requesting reinstatement. AR 76.

In its 2003 decision, the ABCMR considered everything Plaintiff provided, including the many

letters written on behalf of Plaintiff recommending to the Board that the Army should reinstate

him in the military. AR 67.

While Plaintiff may have performed well as an officer, and in the opinion of some

performed above average, the ABCMR's decision to not reinstate Plaintiff was well-reasoned

and was neither arbitrary or capricious. In fact, the evidence before the ABCMR clearly justified

the ABCMR's decision to not reinstate Plaintiff and to affirm his separation from the Army. AR

74-75. As the ABCMR states, Plaintiff was made aware of the differences between nonjudicial

punishment and a trial by a court-martial prior to accepting nonjudicial punishment, and Plaintiff

voluntarily accepted and benefitted from the nonjudicial process.[4] AR 74.

The ABCMR considered Plaintiff's allegations, to include "partiality and bias, undue and

improper command influence, professional conduct violations," and determined these allegations

were not supported by the evidence in the record. AR 74. The ABCMR acknowledged that

---

[4] It is also noteworthy that Plaintiff is not the typical soldier or officer, but a judge advocate who received specific training and education on the advantages and disadvantages of accepting nonjudicial punishment.

Plaintiff earned many awards during his years of service, took note of the evaluations he received, and the many letters of support he submitted.

However, the fact remains that MG Thomas was convinced beyond a reasonable doubt that Plaintiff committed the act of larceny.  AR 114.  Although Plaintiff arguably had honorable service before and after the larceny, such misconduct still provides a basis for the separation.  *See* AReg 135-175, ¶ 2-12.  Despite Plaintiff's self-serving statement that MG Thomas told Plaintiff that MG Thomas believed that Plaintiff had no ill intent and that the conduct was just a prank, AR 111, MG Thomas found him guilty beyond a reasonable doubt of larceny and issued the punitive reprimand.  AR 60.  MG Thomas' finding that Plaintiff was guilty of larceny, which includes an intent to permanently deprive, would be inconsistent with the alleged belief that Plaintiff's actions were simply a prank.  However, even assuming for argument's sake that Plaintiff's allegation that MG Thomas believed Plaintiff had no ill intent were true, Plaintiff's unit commander, the Army Reserve Commander, and the Army would not be precluded from initiating Plaintiff's separation.

The applicable regulation sets forth the following guidance on officer separations: "[r]etention of officers substandard in performance of duty or conduct, deficient in character . . . cannot be justified in time of peace or war."  AReg 135-175, 2-10.  Specifically, the regulation provides a non-exhaustive list of examples of moral or professional dereliction which includes "[a]cts of personal misconduct."  Id. 2-12.  Clearly, the evidence in the record far exceeds this

criteria.  Therefore, the ABCMR's decision to deny Plaintiff's request for reinstatement was not

arbitrary, capricious, unsupported by evidence, or contrary to law.


**CONCLUSION**

For the foregoing reasons, Defendant's motions to dismiss and the motion for summary

judgment should be granted.


_____/s/_____
KENNETH L.  WAINSTEIN., D.C.  Bar #451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS D.C. Bar No.  434122
Assistant United States Attorney


_____/s/_____
KEVIN K. ROBITAILLE
Special Assistant U.S.  Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
(202) 353-9895

     OF COUNSEL:
LIEUTENANT COLONEL JOSEPH C. FETTERMAN
MAJOR CHRISTOPHER P. SOUCIE
Department of the Army
U.S. Army Litigation Division
901 North Stuart Street, Suite 400
Arlington, VA 22203-1837
703-696-1626