UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN E. THALASINOS,<br><br>*Plaintiff,*<br><br>v.<br><br>SECRETARY OF THE ARMY,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:05-cv-01862-EGS<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to LCvR 7(h), Plaintiff respectfully submits this statement of material facts as to which there is no genuine dispute.

1. On November 28, 1984, Plaintiff received his commission as an officer in the U.S. Army. Admin. Rec. at 46.

2. In 1986, Plaintiff completed the Judge Advocate General ("JAG") Officer Basic Course; in 1989, he completed the JAG Officer Advanced Course; in 1993, he completed the Command and General Staff College course. Admin. Rec. at 9.

3. Plaintiff performed exceptionally well in the Army Reserve. He was awarded two Army Commendation Medals, two Army Achievement Medals, three Army Reserve Components Achievements Medals, the National Defense Service Medal, two Armed Forces Reserve Medals and six overseas training ribbons. Admin. Rec. at 94, 165, 170-71.

4. Throughout his career, Plaintiff received outstanding Officer Evaluation Reports, citing his mission-first attitude and the effortless, efficient manner in which he performed his responsibilities. Admin. Rec. at 22-43, 70-71, 94-96, 176-95.

5. At the time of the incident giving rise to this claim, Plaintiff was on annual training attending the residential phase of the Military Intelligence course at Fort Huachuca, Arizona. Admin. Rec. at 77.

6. On July 29, 1998, Plaintiff and his classmates were eating lunch when, during their discussions and in the spirit of camaraderie, it was decided that a small token trophy was necessary in order to back up the good-natured gamesmanship. Admin. Rec. at 78.

7. Plaintiff decided that his trophy would be a small pocketknife, similar to the one he had purchased earlier at the Ft. Huachuca Post Exchange; he intended to use this ruse as his trophy claim. Admin. Rec. at 78.

8. Plaintiff entered the Post Exchange, a few feet from the indoor mall concession area where he and his classmates were lunching, walked by the knife display in the Post Exchange, removed a knife from the shelf, and attempted to display it to his classmates who were outside the exchange. Admin. Rec. at 48, 78.

9. Plaintiff placed the knife in his pocket. Admin. Rec. at 78.

10. Plaintiff did not leave the premises with the knife. Admin. Rec. at 78.

11. A store security officer detained the Plaintiff and escorted him to the security office. Admin. Rec. at 71, 231.

12. After being transported to the Military Police station, Plaintiff was released on his own recognizance. Admin. Rec. at 71, 231.

13. On August 7, 1998, Plaintiff received nonjudicial punishment under Article 15, Uniform Code of Military Justice ("UCMJ"), from MG John D. Thomas, Jr., Commanding General (Regular Army), Fort Huachuca, for attempting to steal a knife from the Fort Huachuca Post Exchange. Admin. Rec. at 229.

14. MG Thomas directed that the Plaintiff receive a Memorandum of Reprimand ("MOR") and that it be placed in the restricted, as opposed to performance, portion of his Official Military Personnel File ("OMPF"), so that Plaintiff could continue his military career. Admin. Rec. at 71, 78-79, 86, 229.

15. On August 11, 1998, BG Gary Dilallo, Deputy Commander (Army Reserve), 77th Reserve Support Command ("RSC"), Fort Totten, NY, issued Plaintiff a Letter of Reprimand ("LOR") for the same conduct, and over Plaintiff's objection, BG Dilallo directed that the LOR be placed in the performance portion of Plaintiff's OMPF. Admin. Rec. at 236.

16. After the incident, the Army Promotion Board listed Plaintiff as being selected for promotion to the rank of LTC. MG Collins, Commanding General, 77th RSC, refused to endorse Plaintiff's promotion and returned the appointment letter to the Board. Admin. Rec. at 8, 85.

17. On August 3, 1999, after Plaintiff had returned to his Army Reserve unit, MG Collins appointed a Board of Officers ("the Board") pursuant to Army Regulation 135-175 to determine if Plaintiff should be separated from the Army. Admin. Rec. at 232-35.

18. On August 3, 1999, MG Collins appointed Colonel ("COL") Edward W. McCarty, the newly selected 77th RSC Staff Judge Advocate ("SJA"), to serve as both President and Legal Advisor (without vote) of the Board. Admin. Rec. at 232, 235.

19. The other Board members, COL Frank J. Kogel and COL Cristopher, were full-time AGR's at Fort Totten who worked closely with MG Collins. Admin. Rec. at 80, 232, 252.

20. On August 24, 1999, Plaintiff's attorney requested that COL McCarty recuse himself as President and Legal Advisor to the Board, stating that it would be impossible for him to rule on potentially prejudicial and inadmissible evidence that might be proffered outside the presence of the Board and maintain the required neutrality and impartiality. Admin. Rec. at 108-09.

21. On September 2, 1999, COL McCarty directed that a copy of his N.Y. Judge's Review profile be faxed to Plaintiff's attorney. Admin. Rec. at 82.

22. On September 22, 1999, Plaintiff's counsel submitted to MG Collins a request for the recusal of COL McCarty. Admin. Rec. at 110-11.

23. MG Collins later designated COL McCarty to serve as Board President only. Admin. Rec. at 233, 252, 258.

24. During the Board hearing, Plaintiff sought to introduce evidence challenging the allegation forming the basis of the involuntary separation action. Admin. Rec. at 69, 84, 274.

25. The Board ruled that Plaintiff could not submit the desired evidence or otherwise contest the finding of guilt made by MG Thomas. Admin. Rec. at 69, 84, 274.

26. The Board further ruled that the Article 15 proceeding confirmed Plaintiff's guilt, and Plaintiff therefore would not be allowed to present evidence to the contrary. Admin. Rec. at 69, 84, 92, 274.

27. Plaintiff timely and effectively objected to the Board's rulings. Admin. Rec. at 69, 84, 274.

28. On November 1, 1999, Plaintiff was assigned to the Army Reserve Control Group (Reinforcement) at St. Louis. Admin. Rec. at 278.

29. On January 13, 2000, the Army Reserve Personnel Component in St. Louis issued orders discharging Plaintiff from the Army Reserve under the provisions of AR 135-175; Plaintiff's discharge was characterized as General, Under Honorable Conditions. Admin. Rec. at 242.

30. On January 4, 2000 and February 1, 2000, Plaintiff's counsel requested a copy of the summarized record of the Board proceedings and a copy of the tapes of the hearing for the purpose of appealing the Board's decision. Admin. Rec. at 112, 113.

31. The Army Reserve did not provide Plaintiff with the requested materials, and hence they were not available for review by the Army Board for the Correction of Military Records ("ABCMR"). Admin. Rec. at 73, 82-83.

32. Plaintiff was unable to obtain the tapes of the Board hearing from the Army until nearly two years after the ABCMR's final decision on his case, and only after Plaintiff filed Freedom of Information Act and Privacy Act requests and follow-up letters which included the threat of litigation in the case of non-compliance. Admin. Rec. at 73; Complaint at ¶ 46.

33. On May 2, 2001, the Army Discharge Review Board ("ADRB"), in a majority opinion, granted Plaintiff's request to upgrade his discharge characterization to Honorable. Admin. Rec. at 244-46.

34. On May 2, 2001, the ADRB concluded that Plaintiff's discharge was proper, and in a unanimous decision determined that the specified reason for discharge should not be changed. Admin. Rec. at 244-46.

35. The ADRB noted that evidence indicated that on October 2, 1999, a Board of Officers met and recommended that the applicant be discharged with the issuance of a general discharge characterization, and that on November 7, 1999, the Commander, 77th RSC, recommended the approval of the Board proceedings. Admin. Rec. at 242.

36. On February 19, 2003, Plaintiff submitted an application for the correction of records to the ABCMR. Admin. Rec. at 76.

37. In his application, Plaintiff cited as error: (1) COL McCarty's dual participation as Board president and legal advisor; (2) COL McCarty's correspondence to defense counsel Bergrin prior to the Board hearing; (3) the legal office that conducted the legal review of the Board action included the Recorder and Board President/Legal Advisor of the Board; (4) the failure of COL

McCarty and MG Collins to provide Plaintiff and his counsel the summarized recording of proceedings or the tape recording of the hearing; and (5) the Board's refusal to allow Plaintiff to present evidence regarding the alleged misconduct. Admin. Rec. at 76, 80-84.

38. On October 17, 2003, the ABCMR informed the Plaintiff that it denied his application. Admin. Rec. at 66.

39. In its Memorandum of Consideration, the ABCMR noted that the proceedings of the Board "are not available." Admin. Rec. at 74.

40. In its Memorandum of Consideration, the ABCMR addressed, together rather than independently, Plaintiff's contentions of partiality, bias, and professional conduct violations, dismissing each as having "no basis in fact." Admin. Rec. at 74.

41. In its Memorandum of Consideration, the ABCMR found that Plaintiff's nonjudicial proceedings established his guilt, but did not address Plaintiff's complaint that the doctrine of res judicata was unlawfully applied by the BOI thereby collaterally estopping him from providing facts or arguments regarding the incident at the heart of the Board proceeding, the alleged larceny. Admin. Rec. at 74-75.

Respectfully submitted,

David P. Sheldon (446039)
LAW OFFICES OF DAVID P. SHELDON, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C. 20003
(202) 546-9575

Attorney for Plaintiff

August 18, 2006